## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

MICHAEL F. BILLS and SANDRA K.
BILLS,

         Plaintiffs,

vs.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, S.I.,

         Defendant.

No.  C21- 33-LTS-KEM

**MEMORANDUM OPINION AND
ORDER ON DEFENDANT'S
PARTIAL MOTION TO DISMISS**

## I.    INTRODUCTION

This matter is before me on a partial motion (Doc. 23) to dismiss filed by defendant American Family Mutual Insurance Company, S.I. (American Family), which seeks dismissal of Counts II and III of the amended complaint (Doc. 21).[1]  Plaintiffs Michael Bills and Sandra Bills (the Bills) have filed a resistance (Doc. 30) and American Family has filed a reply (Doc. 33).  Oral argument is not necessary.  *See* Local Rule 7(c).

## II.    APPLICABLE STANDARDS

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule

---

[1] American Family filed a prior, partial motion (Doc. 10) to dismiss, after which plaintiffs filed an amended complaint (Doc. 21).  The prior motion will be denied as moot.

8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for

2

summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil Procedure 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *Id.*

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

### III.   ANALYSIS

The amended complaint asserts four causes of action:

Count I –      Breach of Contract

Count II -     Bad Faith Failure to Pay Benefits

Count III –    Punitive Damages

Count IV –     Vexatious Refusal to Pay Claim (Mo. Ann. Stat. § 375.420)

3

Doc. 21. American Family moves to dismiss Counts II and III. It argues that I must apply Iowa's choice of law rules for contracts and that, under that test, Missouri law applies. American Family argues that Missouri law does not recognize a claim for first party bad faith by an insured against an insurer. And without a bad faith claim, American Family argues that punitive damages are not available. In the alternative, American Family argues that the Bills' allegations fail to state a claim for punitive damages.

The Bills argue that I must apply Iowa's choice of law rules for torts and that, under that test, Iowa law applies. They contend that under Iowa law, Counts II and III state viable claims. In response, American Family argues that even under Iowa's choice of law rules for torts, Missouri law applies.

"Federal courts sitting in diversity apply the choice-of-law rules of the forum state." *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009) (citing *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007)). "Before applying the forum state's choice-of-law rules, however, a trial court must first determine whether a conflict exists." *Prudential Ins. Co.*, 475 F.3d at 924. American Family argues there is a conflict between Missouri and Iowa law regarding recognition of a first party claim for bad faith denial of insurance benefits. Missouri law does not recognize such a claim. *See Overcast v. Billings Mutual Ins. Co.*, 11 S.W.3d 62, 69 (Mo. 2000) (en banc) ("an insurance company's denial of coverage itself is actionable only as a breach of contract and, where appropriate, a claim of vexatious refusal to pay"); *Harris v. Auto-Owners Ins. Co.*, Case No. 21-cv-03159, 2021 WL 2954407, at *2-3 (W.D. Mo. July 14, 2021) (dismissing plaintiff's claims of bad faith and punitive damages under Missouri law). Iowa law does recognize such a claim. *See Rodda v. Vermeer Mfg.*, 734 N.W.2d 480, 483 (Iowa 2007) ("Iowa law recognizes a common-law cause of action against an insurer for bad-faith denial or delay of insurance benefits."). I agree with American Family that there is a conflict between Missouri and Iowa law. As such, I will apply the forum state's (Iowa's) choice of law rules.

4

The parties dispute whether I should apply Iowa's choice of law rules for contracts or Iowa's choice of law rules for torts. The Bills argue that bad faith failure to pay is a tort-based cause of action. American Family argues that a bad faith claim is a claim "on the policy" such that the choice of law rules for contracts apply. *See Stahl v. Preston Mut. Ins. Ass'n*, 517 N.W.2d 201, 204 (Iowa 1994) ("Stahl's cause of action for bad faith is fundamentally a claim on the policy."). As noted above, however, American Family also argues that even under a tort-based approach, Missouri law applies.

A first party bad faith claim is a tort under Iowa law. *See Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988) ("We conclude it is appropriate to recognize the first-party bad faith tort to provide the insured an adequate remedy for an insurer's wrongful conduct."). In *Thornton v. Amer. Interstate Ins. Co.*, 897 N.W.2d 445 (Iowa 2017) (*Thornton I*), the Iowa Supreme Court stated:

> In [*Dolan*], we recognized a common law action in tort for bad faith against a first-party insurer because "traditional damages for breach of contract will not always adequately compensate an insured for an insurer's bad faith conduct." . . . We concluded allowing a remedy in tort was "justified by the nature of the contractual relationship between the insurer and insured."

*Id*. at 462 (citations omitted). Because first-party bad faith is a tort claim under Iowa law, punitive damages are available (as the Bills seek in Count III). *See Dolan*, 431 N.W.2d at 794; *see also Thornton v. Amer. Interstate Ins. Co.*, 940 N.W.2d 1, 42 (Iowa 2020) (*Thornton II)* (upholding but reducing award of punitive damages); *Magnusson Agency v. Pub. Entity Nat'l Co-Midwest*, 560 N.W.2d 20, 29 (Iowa 1997) (punitive damages are not available for breach of contract unless the breach also constitutes an intentional tort that was committed with malice).

The Court's statement in *Stahl* that bad faith claims are "fundamentally a claim on the policy" was for purposes of determining whether the policy's one-year limitation for bringing suit applied to plaintiff's bad faith claim. *See Stahl*, 517 N.W.2d at 203. The *Stahl* Court repeatedly referred to the bad faith claim as a tort. *Id*. ("The question of

5

when a tort action is considered 'on the policy' is one of first impression in this state."). Its conclusion that Stahl's bad faith claim was fundamentally a claim "on the policy," and therefore time-barred, related solely to the applicable limitations period and has no bearing on the nature of a bad faith claim as a tort. As such, I agree with the Bills that Iowa's choice of law rules for tort claims apply.

Iowa has adopted the "most significant relationship" test under § 145 of the Restatement (Second) of Conflict of Laws for resolving conflict of law questions in tort actions. *See Veasely v. CRST Intern., Inc.*, 553 N.W.2d 896, 897 (Iowa 1996). It requires consideration of the following factors:

> (a)    the place where the injury occurred,
> (b)    the place where the conduct causing the injury occurred,
> (c)    the domicil, residence, nationality, place of incorporation and place of business of the parties and
> (d)    the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145. The Restatement also provides the following general choice of law principles to consider in the absence of a statutory directive in determining which state has the most interest in the litigants and outcome:

> (a)    the needs of the interstate and international systems,
> (b)    the relevant policies of the forum,
> (c)    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d)    the protection of justified expectations,
> (e)    the basic policies underlying the particular field of law,
> (f)    certainty, predictability, and uniformity of result, and
> (g)    ease in the determination and application of the rule to be applied.

Restatement (Second) Conflict of Laws § 6. I will consider the factors in both § 6 and § 145 in determining which state has the most significant relationship and most interest in the litigants and outcome.

The Bills advocate for Iowa as having the most significant relationship based on § 145. They argue they were living in Iowa when coverage was denied, that Iowa is listed

6

as the primary address on the policy,[2] that they used the Daryl Braun Agency – located in Iowa – to obtain the policy, that Iowa is their state of residency and American Family is a foreign corporation doing business in various locations in Iowa. *See* Doc. 30-1 at 6 (citing Doc. 10-2).

American Family notes the policy is "subject to the statutes of the state in which the residence premises is located,"[3] that the policy applied only to the Missouri home, is a Missouri Homeowners Policy for a property located in Missouri, that any alleged damage, investigation and repairs occurred in Missouri and that the Bills have also alleged a Missouri state law claim for vexatious refusal to pay (Count IV).

With regard to the place of injury, courts have held that it is the location where a plaintiff was living when denied coverage. *See Jamison v. Depositors Ins. Co.*, No. 4:14-CV-3009, 2015 WL 11108869, at *3 (D. Neb. Apr. 15, 2015) (collecting cases); *Am. Guarantee and Liability Ins. Co. v. U.S. Fidelity & Guar. Co.*, 668 F.3d 991, 997 (8th Cir. 2012) ("the place where an insured feels the economic impact of an excess verdict is the place where an injury occurs for purposes of a Section 145 choice-of-law inquiry in a bad faith failure-to-settle case."). There is no dispute that the Bills were living in Iowa when they were denied coverage.

---

[2] On a motion to dismiss pursuant to Rule 12(b)(6), the court ordinarily cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *see also Buck v. F.D.I.C.*, 75 F.3d 1285, 1288 n.3 (8th Cir. 1996). However, I may consider documents that are embraced by the pleadings without converting the motion into a summary judgment motion. *See, e.g., Jenisio v. Ozark Airlines, Inc.*, 187 F.3d 970, 972 n.3 (8th Cir. 1999) (citing *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997)). Here, plaintiffs attached the renewal declarations of the policy to the amended complaint as Exhibit A. Doc. 21-1. Because the policy is clearly embraced by the amended complaint, I will consider it for purposes of addressing American Family's motion.

[3] This statement is contained within a conformity clause in the policy. Doc. 10-2 at 33. Because Count II does not involve a statute, this provision is not controlling on the issue of which state's law applies.

7

The second factor under § 145 is where the conduct causing the injury occurred. In this case, the conduct causing the injury was the decision to deny the Bills' claim. *See Lange v. Penn. Mut. Life Ins. Co.*, 843 F.2d 1175, 1179 (9th Cir. 1988) (conduct causing injury occurred in state of insurer's home office). The Bills obtained their policy through the Daryl Braun Agency in Iowa. American Family is incorporated in Wisconsin with its principal place of business in Wisconsin. *See* Doc. 8. Therefore, Missouri is ruled out in favor of either Wisconsin or Iowa as to the second factor of where the conduct causing injury occurred.

The third and fourth factors also favor Iowa. The third factor is the domicil, residence, nationality, place of incorporation and place of business of the parties. American Family is a Wisconsin corporation registered to do business in Iowa. The Bills are residents of Iowa and Iowa is their domicil. *See* Restatement (Second) of Conflict of Laws § 20 (explaining when there are two dwelling places at issue, such as a home (defined in § 12) where the individual lives during the majority of the year, and a residence for weekend or vacation purposes, the domicil is the home). Missouri is again ruled out in favor of either Iowa or Wisconsin. The fourth factor is the place where the relationship is centered. The Bills obtained the policy through the Daryl Braun agency located in Iowa. This factor weighs in favor of applying Iowa law.

Based on the § 145 factors, Iowa has the most significant relationship. Courts have reached similar conclusions under similar factual scenarios. *See Thiele v. Northern Mut. Ins. Co.*, 36 F. Supp. 2d 852, 852 (E.D. Wis. 1999) (in dispute between Wisconsin residents and Michigan insurance company regarding coverage of plaintiffs' Michigan property, court found that Wisconsin law applied under Wisconsin choice of law rules); *Jamison*, 2015 WL 11108869, at *3-*4 (applying Nebraska law in dispute between Nebraska residents and Iowa insurer based on damage to their Wisconsin vacation home). Both parties cite *Jamison* as supporting their position. *See* Doc. 30-1 at 6; Doc. 33 at 3-4. The *Jamison* court applied both the § 145 and § 6 factors. As to the § 145 factors, the court concluded the injury occurred in Nebraska and the conduct causing the injury

8

occurred in Wisconsin and Iowa. The insurance company denied the Jamisons' claim from its offices in Iowa, but some of the claim evaluation took place in Wisconsin. The plaintiffs were domiciled in Nebraska and the insurance company was incorporated in Iowa with its principal place of business there as well. The court noted however, that the insurer was registered to do business in Nebraska and that the parties' relationship was centered in Nebraska, where the policy was issued. *Id.* at *3.

With regard to § 6, the court found that most factors were neutral except for "relevant policies of the forum" and "relevant policies of other interested states and particularly of the state with the dominant interest in the determination of the particular issue." The court noted Wisconsin has a public policy favoring the availability of punitive damages to punish and deter unlawful conduct and that Nebraska has a policy prohibiting such damages. *Id.* at *4. The court noted Nebraska's interest was attenuated by the fact that the insurer was not a Nebraska company and Wisconsin's interest was attenuated by the fact that neither the plaintiff nor defendant was in Wisconsin. Because the insurer was registered to issue insurance policies in Nebraska and it is generally accepted that the state where the injured plaintiff is located has the more substantial interest in the adjudication of the plaintiff's claim, the court concluded "Nebraska's interest in the relationship between an insurer doing business in Nebraska and its Nebraska insureds is more significant than the interests of Wisconsin or Iowa." *Id.*

American Family focuses on the *Jamison* court's statement that "[a]lthough the bad faith claim sounds in tort, the relationship between the parties is fundamentally contractual, and the contract was issued in Nebraska and is governed by Nebraska law." *See* Doc. 33 at 4 (quoting *Jamison*, 2015 WL 11108869, at *3). American Family argues that even under a tort-based approach, the contractual factors should tip the scales in favor of applying Missouri law because the dispute involves a Missouri Homeowners Policy for a property located in Missouri, that the policy is "subject to the statutes of" Missouri, that American Family has paid at least some of the claims on the Missouri property and that the factual dispute centers on whether "the losses asserted by Plaintiffs

9

are reasonable and accurate with respect to restoring the Property to its pre-loss condition and replacing damaged personal property." *Id.* (citing Doc. 21 at ¶¶ 3, 8-9, 12-13).

Of course, the "contractual factors" considered in *Jamison*, such as where the policy was issued, favor application of Iowa law. The location of the insured property is not related to a § 145 factor and American Family has not identified any § 6 factor to which that fact applies. American Family also attempts to distinguish *Jamison* factually, noting that the insurance company would not have issued coverage to plaintiffs on their Wisconsin home had it not already covered their primary home in Nebraska, and that unlike the insurer in *Jamison*, American Family has paid at least some of the claims on the Missouri property. *Id.* at 3 (citing *Jamison*, 2015 WL 11108869, at *1). Again, American Family has not demonstrated the relevance of these facts to any of the § 145 or § 6 factors.

I conclude that *Jamison* provides more support for application of Iowa law than Missouri law. Similar to *Jamison*, the Bills' vacation property was located in a separate state from their primary residence, which is also the state where they obtained the policy and where their claim was denied (at least to some extent). While the physical loss occurred in Missouri, that loss is not the injury for purposes of a bad faith claim. The relevant injury is the denial of complete coverage. As in *Jamison*, the § 145 factors weigh in favor of the plaintiffs' home state (here, Iowa) as having the most significant relationship.

With regard to § 6, none of the factors weigh heavily in favor of one state or another. While Iowa and Missouri differ in that Iowa law allows a first party bad faith claim against an insurer and the recovery of punitive damages, while Missouri recognizes only a claim for vexatious refusal to pay,[4] the policies underlying these distinct claims

---

[4] *See Duncan v. Andrew Cnty. Mut. Ins. Co.*, 665 S.W.2d 13, 19-20 (Mo. Ct. App. 1983) (concluding that first party bad faith claim against an insurer has been legislatively preempted

are similar. As noted above, the Iowa Supreme Court explained in *Dolan* that part of its reasoning for recognizing a first party bad faith claim was that traditional damages for breach of contract would not always adequately compensate an insured. It emphasized that its focus was on the insured and not the extent to which insurers may be subject to additional statutory penalties for misconduct. *Dolan*, 431 N.W.2d at 794. The Court noted that Iowa Code chapter 507B was likely sufficient to deter bad faith conduct by insurers, but that the penalties provided under that statute were insufficient to compensate the insured. *Id.* The Court further declined to find that extra-contractual damages should be dependent on the insured sustaining severe emotional distress. *Id.* It found that recognition of a tort claim for first party bad faith was justified based on the inherently unequal bargaining power between the insurer and insured. *Id.*

The Missouri Supreme Court has explained that the purpose of § 375.420 is "to make the contracting party whole in a practical sense and to provide an incentive for insurance companies to pay legitimate claims without litigation." *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006) (en banc) (quoting *Overcast*, 11 S.W.3d at 67). Application of Iowa law is consistent with the general choice of law principles outlined in § 6 and consideration of those factors does not support application of Missouri law over Iowa. As such, I find that Iowa law applies to Count II. Because Iowa law recognizes a claim for first party bad faith, American Family's motion to dismiss Count II will be denied.

With regard to punitive damages (Count III), § 171 of the Restatement (Second) of Conflict of Laws provides that "[t]he law selected by application of the rule of § 145 determines what items of loss can be included in the damages and what limitations, if any, are imposed upon the amount of recovery." As explained above, Iowa law permits

---

by Mo. Stat. § 375.420 – Vexatious refusal to pay claim). Section 375.420 does not allow punitive damages but provides for recovery of attorney's fees and damages not to exceed 20 percent of the first $1500 loss and 10 percent of the amount of loss in excess of $1500 in addition to the amount of loss.

an award of punitive damages for claims of first party bad faith against an insurer. *See also Jackson v. Travelers Ins. Co.*, 26 F. Supp. 2d 1153, 1165 (S.D. Iowa 1998) (concluding in a conflict of law analysis that Iowa law should apply to plaintiffs' punitive damage claim for insurance bad faith).

American Family further argues that the Bills have failed to state a claim for punitive damages because they have not alleged that American Family engaged in any malicious, illegal or immoral conduct. Doc. 23-1 at 9-10 (citing *Pirkl v. N.W. Mut. Ins. Ass'n*, 348 N.W.2d 633, 636 (Iowa 1984)).[5] The Bills argue that, as a form of relief, punitive damages are not subject to a motion to dismiss. *See Sec. Nat'l Bank of Sioux City v. Abbott Labs.*, Civ. No. 11-CV-4017-DEO, 2012 WL 327863, at *21 (N.D. Iowa Feb. 1, 2012) ("punitive damages are not a cause of action, and as such, so long as there are surviving claims, they are not subject to a motion to dismiss. Only after a plaintiff has proven their case are punitive damages considered."). In any event, they cite paragraphs 5 through 12 and 33 of their amended complaint, arguing that these allegations sufficiently state a claim for punitive damages. Those allegations state:

5. Included in the Policy, under the Property Coverage Section, Plaintiffs were covered for "Dwelling, Other Structures, Personal Property, Loss of Use, and Additional Coverage for Fungi or Bacteria."

6. That on or about March 18, 2019, flooding occurred causing extensive damage to the Property and its contents, including personal property of the Plaintiffs.

7. Plaintiffs made appropriate written notifications to Defendant in regard to the losses at issue.

---

[5] In *Pirkl*, the Court stated punitive damages would be recoverable in situations involving "positive misconduct of a malicious, illegal, or an immoral nature." *Pirkl*, 348 N.W.2d at 636. *See Dolan*, 431 N.W.2d at 794 ("With regard to the recovery of punitive damages, we adhere to the standards applied in *Pirkl*, 348 N.W.2d at 636.").

8.    On or about March 30, 2020, via letter to Plaintiffs, Defendant denied to fully cover Plaintiffs for their claims related to the losses set forth above.

9.    On or about May 7, 2020, after receiving additional information from Plaintiffs, Defendant again denied to fully cover Plaintiffs for their claims related to the losses.

10.   On or about September 14, 2020, with Plaintiffs' assent, Defendant's claims adjustor personally inspected the Property ostensibly for the purpose of accurately determining loss.

11.   On or about October 9, 2020, however, Defendant once again denied to fully cover Plaintiffs for their claims related to the losses caused by the flooding.  Defendant specifically stated in its letter of denial, that the difference between Defendant's estimate and Plaintiffs' confirmed and documented losses were attributable to "overage charged by the contractor [] as the result of upgrades and improvements, additional work at [Plaintiffs'] request, and replacement of items that were not damages as a result of the loss."

12.   That the losses asserted by Plaintiffs are reasonable and accurate with respect to restoring the Property to its pre-loss condition and replacing damaged personal property.

33.   Defendant has continued to knowingly and willingly deny Plaintiffs' claims, thereby disregarding Plaintiffs' legal right to receive full compensation for their damages.  Said denials are a wanton and reckless or grossly negligent disregard for the rights of others who might be expected to be injured by such conduct.

Doc. 21.[6]

I need not reach the issue of whether a pre-answer motion to dismiss is appropriate with regard to punitive damages, as a mere form of relief.  Even if such a motion is appropriate, the Bills have sufficiently alleged that American Family's denial of full coverage was done knowingly and willfully, with a wanton and reckless or grossly

_____

[6] Plaintiffs replead and reallege paragraphs 1 through 31 in Count III.  *See* Doc. 21 at 6.

13

negligent disregard for the rights of others, and have alleged facts in support in paragraphs 5 through 12 of the amended complaint. *See* Iowa Code § 668A.1 (requiring a plaintiff to prove by a preponderance of clear, convincing and satisfactory evidence, that the conduct of the defendant constituted willful and wanton disregard for the rights or safety of another, in order for a jury to award punitive damages). American Family's motion to dismiss Count III will be denied.

## IV.  CONCLUSION

For the reasons stated herein:

1. American Family's partial motion (Doc. 23) to dismiss Counts II and III of the amended complaint is **denied**.

2. American Family's previous partial motion (Doc. 10) to dismiss is **denied** as moot.

**IT IS SO ORDERED.**

**DATED** this 17th day of August, 2021.

_____
Leonard T. Strand, Chief Judge